IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL REEHLE<br><br>Plaintiff,<br><br>v.<br><br>FRIENDS SERVICES FOR THE AGING,<br>d/b/a FRIENDS SERVICES ALLIANCE<br><br>Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

## PARTIES

1. Plaintiff herein is Carol Reehle located at 2720 Hauck Road, Green Lane, PA 18054.

2. Defendant herein is Friends Services for the Aging d/b/a Friends Services Alliance with a registered address for service, and a principal place of business at 460 Norristown Road, Suite 300, Blue Bell, PA 19422.

3. At all relevant times, Plaintiff Carol Reehle ("Reehle") was an "employee" in a protected class as defined under the Title VII of the 1964 Civil Rights Act, as amended, 42 USC 2000e *et seq.* ("Title VII") and under the Pennsylvania Human Relations Act, 43 P.S. 951 *et seq.*, ("PHRA") in that she had sincerely held religious beliefs.

4. Defendant Friends Services for the Aging d/b/a Friends Services Alliance ("FSA" or the "Company") is a non-profit corporation engaged in an industry affecting commerce having fifteen or more employees within the state of Pennsylvania and is an "employer" as defined under Title VII. Further FSA is an "employer" under the PHRA as it employs four or more individuals in the state of Pennsylvania.

1

5. At all relevant times, FSA was acting through its officers, directors, employees and/or agents.

## JURISDICTION

6. This action arises under Title VII.

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the claims are substantively based on a violation of Title VII.

8. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 as to Plaintiff's claims under the PHRA.

9. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

10. All conditions precedent to suit have been satisfied, as:

   a. On or about February 10, 2022, Plaintiff dual filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC").

   b. More than one year has lapsed since the filing of the charge with EEOC and PHRC.

   c. On February 23, 2023, the EEOC issued a Notice of Right to Sue. This filing is made within 90 days of receipt of the EEOC's Notice of Right to Sue.

## FACTS

11. At the time of her termination, Reehle was a 61-year-old woman who was a 15-year employee of FSA who worked as a Compliance Specialist. She had hoped and planned to complete her career with FSA.

12. FSA provides care organizations with support in remaining compliant with regulatory and licensure requirements, as well as education and training.

13. Reehle's responsibilities as a Compliance Specialist included but were not limited to reviewing Medicare A and B billing documentation, developing Medicare A review policy

and practices for the reviews, providing education through sessions and webinars, and other compliance services.

14. As the Medicare A specialist for FSA, the majority of reviews Reehle conducted were Medicare A billing reviews of claims and supporting records.  Most reviews required no contact with any vulnerable residents and involved very limited contact with staff. Prior to the COVID-19 pandemic, even onsite reviews were conducted in isolated areas of the facility under review, with limited staff communication.  Communications with staff were frequently conducted by phone, email, or brief in-person meetings.

15. During the pandemic, FSA instructed Reehle to conduct reviews remotely with all communication sent via secure electronic means, email or phone calls. No aspect of the Medicare A reviews had to be eliminated, in contrast to other compliance reviews.

16. Prior to the pandemic, Reehle had developed a policy for FSA to conduct remote Medicare A reviews, which was undergoing pilot testing. If successful, the expectation was to offer the remote review process more broadly for Medicare A reviews. Prior to the pandemic, several remote reviews had been conducted successfully.

17. Beginning in March 2020, FSA employees commenced remote work due to government mandated shutdown orders.  Reehle's work as a Compliance Specialist continued uninterrupted.  She was able to seamlessly transition to remote work, and completed her tasks without fail.  Further, she received a positive annual review in March 2021.

18. As in-person work began to be permitted with limitations, FSA made decisions to perform reviews remotely or in-person, based on facility-specific information, including SARS-CoV2 cases and community infection rates, with each facility questioned prior to scheduling.

19. During this time, Reehle performed several in-person review visits, and she followed screening and masking protocol of the communities served. However, most facilities continued with remote reviews due to COVID-19 spread.

20. During this time, Reehle's work generally did not require her to enter the FSA office. On one occasion, Reehle was asked to train a new staff member in the office. Although FSA had no written policies in place for COVID preventative measures, Reehle maintained social distancing and masking as possible throughout the day.

21. On or about September 2, 2021, FSA's CEO submitted an email correspondence to Reehle inquiring about her vaccination status and intention to obtain vaccination, in preparation for a meeting with the FSA Board regarding a vaccine mandate.

22. Reehle responded to the inquiry by advising that she had not received the vaccine, and that she would provide her exemption request if FSA decided to mandate vaccination.

23. On or about October 6, 2021, FSA issued a COVID VACCINATION POLICY, Effective 10/18/2021 ("Policy"). The Policy provided, *inter alia,* that "All FSA employees are required to provide proof of vaccination or submit an application for a medical or religious exemption to the CEO by 10/18/2021."

24. The Policy further provided that "Any employee who has not provided proof of vaccination or submitted an application for a religious or medical exemption will be placed on temporary, unpaid leave and their employment will be subject to termination…Possibilities of fully remote work as an accommodation will be considered on an individual basis depending on the employee's role."

25. With respect to the Religious Exemption, the Policy stated:

Employees requesting an exemption from this policy due to a medical reason, or because of a sincerely held religious belief, must submit a completed Exemption Request Form to

the CEO to begin the interactive accommodation process no later than 10/18/2021 via email. Accommodations will be granted where they do not cause FSA undue hardship or pose a direct threat to the health and safety of others.

\* \* \* \* \* \* \* \*

Religious Exemption: Employees who are requesting an exemption based on a sincerely led religious belief must certify, in writing, that the sincerely held religious belief precludes the employee from receiving the COVID-19 vaccination. The certification must be signed by the employee.

26. The Policy further stated that exemptions would be granted where they do not cause FSA undue hardship or pose a direct threat to the health and safety of others. According to the Policy, employees who were granted an exemption and continued to work for FSA were subject to masking requirements as a mitigation measure.

27. On October 8, 2021, Reehle submitted a "RELIGIOUS EXEMPTION REQUEST FORM" to FSA.

28. Reehle attached a letter to the exemption form in which she identified her sincerely held religious belief and detailed the reasons why her sincerely held religious beliefs precluded her from obtaining the COVID-19 vaccination. She explained the reasons why she could not, in good faith or conscience, act in contravention to her Christian faith and receive the vaccine.

29. In her request, Reehle described the manner in which she was able to successfully perform her role in a remote fashion. For the rare instances where in-person work was necessary, Reehle noted that she was willing to engage in other accommodations, such as masking, onsite rapid testing or testing prior to in person assignments.

30. On October 13, 2021 (while Reehle was on vacation), FSA's CEO contacted Reehle to request clarification as to whether Reehle was submitting documentation from a

physician contraindicating the vaccine, or whether the request was based solely on her religious beliefs.

31. On or about October 16, 2021, Reehle responded to the inquiry, and explained that the request was solely based on her sincerely held religious beliefs, and that the questioned language was a supporting reason of the ways in which her faith impacted all aspects of her life, including her physical body.

32. On October 22, 2021, FSA issued a letter denying the request for religious exemption, stating that it would be an undue hardship to grant the exemption request "even assuming that your letter sets out a sincerely held religious belief which prevents you from receiving a COVID-19 vaccination."

33. In particular, FSA denied the request on the assertion that Reehle's role as a Compliance Specialist required her to go on-site to FSA's clients to assess regulatory compliance and to provide guidance.

34. FSA did not address Reehle's requested accommodation that she perform on-site visits and reviews while masked, and/or that she undergo rapid testing or testing in person before the assignment.

35. Instead, FSA concluded the letter by stating that her last date of employment would be November 5, 2021.

36. This notice of termination came without any discussion of the requested exemption or the proposed requested reasonable accommodations with Reehle.

37. This failure to engage in the interactive process was a violation of the law.

38. After receiving the notice denying her accommodation request and terminating her employment, Reehle arranged a call with the CEO on October 26, 2021.

39. For the first time, FSA had a discussion with Reehle regarding the accommodation requests – but only after notifying her that her employment would be terminated effective November 5, 2021.

40. During the call, and in a subsequent letter to FSA, Reehle described the ways in which her job (in particular, Medicare A reviews) lent itself to remote, off-site work.

41. She further highlighted that FSA undertook no assessment to determine what protocols, restrictions or requirements were in place for the member organizations to which FSA provided services, or whether such organizations offered COVID-19 vaccination exemptions as to vendors, and that such inquiries would be reasonable and present little hardship.

42. Moreover, Reehle suggested continuing her employment until the first quarter of 2022, to conduct a trial run of whether it would be an undue burden to continue offering remote Medicare A reviews, with mask wearing and COVID-testing for on-site work.

43. Reehle reiterated her willingness to wear a mask for onsite work and to undergo testing before entering facilities.

44. All of the suggestions for reasonable accommodation were rejected, and Reehle's termination from employment became effective on November 5, 2021.

45. The failure to provide reasonable accommodation and the wrongful termination of employment were violations of the law.

COUNT I
Discrimination Under Title VII – Failure to Engage in Interactive Process

46. The foregoing paragraphs are incorporated as if stated at length herein.

47. Plaintiff is a member of a protected class under Title VII as she had sincerely held religious beliefs.

48. At all relevant times, FSA was aware of Reehle's sincerely held religious beliefs.

7

49. Reehle was qualified for the position which she held, and was able to perform the essential functions of the job with or without reasonable accommodations.

50. Due to her sincerely held religious beliefs, Reehle requested a reasonable accommodation from FSA in the form of an exemption from the employer imposed COVID-19 vaccine mandate. In connection with the request, Reehle proposed several reasonable accommodations, including but not limited to that she wear a mask and undergo testing when on-site work was required, and/or that she work remotely when on-site work was not required.

51. FSA did not make a good faith effort to engage with Reehle in seeking the accommodations, instead informing her that her employment was terminated without engaging with the employee.

52. The requested accommodations were reasonable, would have been effective, and would not have posed an undue hardship to the employer.

53. Reehle could have been reasonably accommodated by for FSA's lack of good faith.

54. The Company violated Title VII by failing to properly engage in the interactive process and terminating Reehle's employment.

55. As set forth more fully above, this conduct constitutes unlawful discrimination on the basis of religion in violation of Title VII.

56. Reehle has suffered damages due to FSA's unlawful conduct.

WHEREFORE, Carol Reehle demands that Friends Services for the Aging d/b/a Friends Services Alliance be required to provide all appropriate remedies under Title VII, including back pay, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees, costs, and interest, together with such other relief as the Court deems appropriate.

## COUNT II
### Discrimination Under Title VII – Failure to Reasonably Accommodate

57. The foregoing paragraphs are incorporated as if stated at length herein.

58. Plaintiff is a member of a protected class under Title VII as she had sincerely held religious beliefs.

59. Reehle was qualified for the position which she held, and was able to perform the essential functions of the job with or without reasonable accommodations.

60. Due to her sincerely held religious beliefs, Reehle requested a reasonable accommodation from FSA in the form of an exemption from the employer imposed COVID-19 vaccine mandate. In connection with the request, Reehle proposed several reasonable accommodations, including but not limited to that she wear a mask and undergo testing when on-site work was required, and/or that she work remotely when on-site work was not required.

61. The requested accommodations were reasonable, would have been effective, and would not have posed an undue hardship to the employer.

62. The Company violated Title VII by failing to provide reasonable accommodations, and by terminating Reehle's employment.

63. As set forth more fully above, this conduct constitutes unlawful discrimination on the basis of religion in violation of Title VII.

64. Reehle has suffered damages due to FSA's unlawful conduct.

WHEREFORE, Carol Reehle demands that Friends Services for the Aging d/b/a Friends Services Alliance be required to provide all appropriate remedies under Title VII, including back pay, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees, costs, and interest, together with such other relief as the Court deems appropriate.

COUNT III
Discrimination Under the Pennsylvania Human Relations Act – Failure to Engage in the Interactive Process

65. The foregoing paragraphs are incorporated as if stated at length herein.

66. Plaintiff is a member of a protected class under the Pennsylvania Human Relations Act, 43 P.S. 951 *et seq*. ("PHRA") as she had sincerely held religious beliefs.

67. Reehle was qualified for the position which she held, and was able to perform the essential functions of the job with or without reasonable accommodations.

68. Due to her sincerely held religious beliefs, Reehle requested a reasonable accommodation from FSA in the form of an exemption from the employer imposed COVID-19 vaccine mandate. In connection with the request, Reehle proposed several reasonable accommodations, including but not limited to that she wear a mask and undergo testing when on-site work was required, and/or that she work remotely when on-site work was not required.

69. FSA did not make a good faith effort to engage with Reehle in seeking the accommodations, instead informing her that her employment was terminated without engaging with the employee.

70. The requested accommodations were reasonable, would have been effective, and would not have posed an undue hardship to the employer.

71. Reehle could have been reasonably accommodated by for FSA's lack of good faith.

72. The Company violated the PHRA by failing to properly engage in the interactive process, by failing to provide reasonable accommodations, and by terminating Reehle's employment.

73. As set forth more fully above, this conduct constitutes unlawful discrimination on the basis of religion in violation of PHRA.

74. Plaintiff has suffered damages due to FSA's unlawful conduct.

WHEREFORE, Carol Reehle demands that Friends Services for the Aging d/b/a Friends Services Alliance be required to provide all appropriate remedies under the Pennsylvania Human Relations Act including back pay, front pay and/or reinstatement, compensatory damages, liquidated damages, attorney's fees, costs, and interest, together with such other relief as the Court deems appropriate.

## COUNT IV
### Discrimination Under the PHRA – Failure to Reasonably Accommodate

75. The foregoing paragraphs are incorporated as if stated at length herein.

76. Plaintiff is a member of a protected class under the PHRA as she had sincerely held religious beliefs.

77. Reehle was qualified for the position which she held, and was able to perform the essential functions of the job with or without reasonable accommodations.

78. Due to her sincerely held religious beliefs, Reehle requested a reasonable accommodation from FSA in the form of an exemption from the employer imposed COVID-19 vaccine mandate. In connection with the request, Reehle proposed several reasonable accommodations, including but not limited to that she wear a mask and undergo testing when on-site work was required, and/or that she work remotely when on-site work was not required.

79. The requested accommodations were reasonable, would have been effective, and would not have posed an undue hardship to the employer.

80. The Company violated the PHRA by failing to provide reasonable accommodations, and by terminating Reehle's employment.

81. As set forth more fully above, this conduct constitutes unlawful discrimination on the basis of religion in violation of the PHRA.

82. Reehle has suffered damages due to FSA's unlawful conduct.

WHEREFORE, Carol Reehle demands that Friends Services for the Aging d/b/a Friends Services Alliance be required to provide all appropriate remedies under the Pennsylvania Human Relations Act, including back pay, front pay and/or reinstatement, compensatory damages, attorney's fees, costs, and interest, together with such other relief as the Court deems appropriate.

                                                CURLEY & ROTHMAN, LLC

Date: 03.10.2023                            By: /s Charles V. Curley
                                                      Charles V. Curley
                                                      PA. Attorney ID No. 60486
                                                      Spring Mill Corporate Center
                                                      1100 E. Hector Street, Suite 425
                                                      Conshohocken PA 19428
                                                      610 834 8819
                                                      *Attorneys for Plaintiff*